M. WARD & Co. *v.* JOHN C. MORRISON, AND SIDNEY MOODY, TRUSTEE, AND C. B. MORRISON, CLAIMANT.

*Trustee process.    Citizen of sister States, their rights in our courts considered.    Laws of sister States must be proved.    Assignment of a chose in action, &c.    Claimant and Trustee.*

This court is, and must be, with respect to facts, limited to the statement made by the court below.

Where a citizen of our State owed a debt to a citizen of New York, *it was held,* that the debt is subject to our trustee process, though the plaintiff is a citizen of New York, and that it is no objection, that the principal debtor is also a citizen of New York, for the citizens of sister States are entitled to use our courts, to enforce their legal rights, whether against our own citizens, or others, as fully as they may be used by the citizens of Vermont for that purpose.

To perfect an assignment of a *chose in action,* as against *bona fide* creditors and subsequent purchasers, *notice* must be given to the debtor, of such assignment, and the rule is the same where an insolvent has assigned all his *choses in action,* for the benefit of creditors.

And in the present case, where it was claimed that by the laws of New York, the right of the assignee was perfect to the *chose in action,* even against attaching creditors, without notice to the debtor of the assignment, and that by the comity of nations, the New York rule of law should apply to this case, *it was held,* that before this can be claimed, it should appear, that the attaching creditors are citizens of New York, and that the New York rule of law is different from ours, in regard to the necessity of notice, as courts cannot take *judicial notice* of any law of a sister State, at variance with our own, and if claimed that there is a difference, the burden of proof is on the party claiming it.

TRUSTEE PROCESS.   The declaration is upon a note made by the defendant, John C. Morrison, to the plaintiffs, dated at New York, the 16th day of October, 1850, for $397 98, and payable to the plaintiff's order six months from date.

Sidney Moody, the trustee, disclosed that he was indebted to the defendant, in the sum of two hundred and seventy-four dollars and fifty-four cents, and that said sum is now due to said Morrison and payable in money.   The said disclosure was made on the 11th day of June, 1851.

It appeared in this case, that the principal defendant on the 10th day of May, 1851, made an assignment of his property, including the demand against the trustee, to C. B. Morrison, the claimant, who accepted the assignment; that the claim against the trustee,

was an open account on book, for goods purchased by the trustee, of the principal defendant, in the city of New York, and although there was no special contract between them, that the said claim should be paid in New York city, it had been the practice of the trustee to pay the principal defendant, for similar purchases in the said city.

It also appeared, that the plaintiffs were entered, as creditors of the said John C. Morrison, for the demand in suit, in the said assignment to the said C. B. Morrison, and were entitled to the benefits of said assignment. That the writ in this case, was served upon the trustee, on the 15th day of May, 1851, and that he was notified of the said assignment, on the 24th day of May, 1851.

The County Court, December Term, 1852,—PIERPOINT, J., presiding,—decided that the said Sidney Moody is trustee of the said John C. Morrison; to which decision the said C. B. Morrison, claimant, excepted.

*Barber & Bushnell* for claimant.

The matter in controversy, is a debt due from Moody, the trustee, on a contract with John C. Morrison, the principal debtor. The claimant, C. B. Morrison, derives title to the said debt, by assignment, from the principal debtor, in writing, under seal, accepted by the assignee, and valid by the laws of New York, and made on the 10th day of May, 1851, with notice to the trustee on the 24th day of May, 1851.

The plaintiff's claim to prevent the operation of this assignment and to compel the trustee to pay the debt to them, by virtue of this trustee process, *in invitum*, served on the trustee the 15th day of May, 1851. The plaintiffs, claimant, and principal debtor, all reside in New York.

Can the plaintiffs defeat the title of the claimant to this debt, by the operation of our *trustee process*, there being no such process in New York?   2 Kent's Com. 486.

We insist that the claimant is entitled to this debt. The contract was made in New York, and is to be performed there.   Or if it is not, by the express terms of the contract, payable in New York, or any other place, it is payable every where.   In either case, it is to be treated, as a New York contract, and is to be governed by the *lex loci contractus*, in relation to its nature, validity, interpreta-

tion and incidents. Story's Conflict of Laws §§ 272 (a) 317. *Kerney* v. *Ray*, 3 Barn. & Ald. 301. *Sproule* v. *Legge*, 1 Barn & Cress. 16. *Blanchard* v. *Russell*, 13 Mass. 1. *Potter* v. *Brown*, 5 East 124.

The manner in which contracts may be discharged, dissolved, or extinguished, are among the natural incidents to their concoction. Story's Conflict of Laws § 351. (c.) *Baylies* v. *Houghton et al.*, 15 Vt. 626.

Any thing which affects the dissolution or discharge of a contract, contrary to its express terms, affects the force, construction, and effect of the contract. Contracts are properly held to be dissolvable or extinguishable according to the law of the country where made; and are not dissolvable and extinguishable by the laws of another country, proceeding *in invitum*. Story's Conflict of Laws § 351. (b.)

A discharge of a contract, which is good according to the laws of the place where it is made, or to be performed, is good every where; and a discharge by the law of the place where it is not made, or to be performed, is not good in any other country, unless it be by the act of the parties, or their privies. Story's Conflict of Laws §§ 351, (c.) 331, 342–3. 13 Mass. 1 above cited. *Hill* v. *Blake*, 13 Mass. 153. *Philips* v. *Hunter*, 8 Barn. & Cress. 47. *Lewis* v. *Owen*, 4 Barn. & Ald. 654. 5 East 124 above cited.

Debts have no *situs*, but follow the person of the owner. Story's Conflict of Laws § 399. *Burlock* v. *Taylor & Trustees*, 16 Pick. 335. 6 Pick. 314.

The assignment operates *per se*, as an equitable assignment of the debt, and notice to the debtor is only necessary to charge him with the duty of paying to the assignee, without which a payment to the assignor, or by virtue of process against him, would be good. But an arrest or attachment of the debt in his hands, by a creditor of the assignor, will not entitle such creditor to a priority as of right if the debtor receives notice *pendente lite*, and in time to avail himself of it in discharge of the suit against him. Story's Conflict of Laws §§ 396–7–8–9. *Wood* v. *Patridge*, 11 Mass. 488. *Whipple* v. *Taylor*, 16 Pick. 25. *Daniels et al.* v. *Willard*, 16 Pick. 36. *Foster* v. *Sinkler & Trustee.*, 4 Mass. 450. *Dix* v. *Cobb*, 4 Mass. 508. *Phelps* v. *Hunter*, 2 H. Blackstone, 410. *Muir* v. *Schenck*, 3 Hill 228. Certainly not, unless such attach-

ment would be effectual by the laws of New York. And the burden of proof is on the plaintiff to show this. The assignor having parted with all his right to the property, there is nothing belonging to him, in the trustees' hands to attach. 3 Hill 228. 4 Mass. 450 above cited.

In such a case as this, the claimant may show anything that is necessary to discharge the trustee from the plaintiff's claim, and to secure it to himself. If not, the trustee might collude with the plaintiff, and withhold the evidence necessary to preserve the claimants' rights. Comp. Stat. 263 §§53–4–5–6.

In this case, the evidence of the assignment was exhibited to the trustee and court *pendente lite*, and before the trustee was made chargeable.

The plaintiffs have the benefit of the assignment of all the debtor's property, according to the laws of New York. To permit him, to hold this claim, will give him a preference over the other creditors. And if he collects this debt, after notice of the assignment, he will be holden in New York, as trustee of the assignee. 2 H. Black. 410. 6 Pick. 314. 3 Hill 228 above cited.

*J. W. Stewart and S. S. Phelps* for plaintiffs.

The statute makes all the goods, chattels, rights or credits of the principal debtor in the hands of his trustee, liable for the debts of the debtor. And it is well established that debts due to the residents, in a foreign jurisdiction, can be attached and holden by trustee process in favor of creditors, and payments made by the debtor under the judgments in such trustee suits, are in all jurisdictions, admitted, as a defence at least *pro tanto*. *Trombly et al.* v. *Clarke*, 13 Vt. 118. *Bissell* v. *Briggs*, 9 Mass. 462. *Hull* v. *Blake*, 13 Mass, 153. *McDaniels* v. *Hughs*, 3 East 366.

In proceedings *in rem*, the judgment is of universal obligation, and proceedings by creditors agianst the debts due to their debtor, from third persons, are *in rem*, and entitled to the same consideration. Story's Conflict of Laws § 592, and cases cited.

In the present case the claimant or assignee, acquired no title under the assignment, to the debt in controversy, that was valid in this State against creditors, they not having assented to the assignment, and notice thereof not having been given to the trustee, prior to the attachment.

The *locus rei sitae* of debts, with reference to creditors, is the locality of the debtor, and the *lex loci rei sitae* prevails over the law of the domicil of the owner, with regard to the rule of preferences in the case of insolvent estates. 2 Kent Com. 406. A prior assignment under a foreign law will not be permitted to prevail over a subsequent attachment by a creditor, of the debtor's effects here, made before notice or payment or delivery.

Liens of any description acquired under the laws of one jurisdiction and invalid by the laws of another, must always give way in the courts of the latter, when in conflict with liens acquired there, by creditors, under its laws. The right of *priority forms no part of the contract*, but it is a personal privilege, dependent on the laws of the place where the right is tried, so far as the citizens, or any creditor seeking remedy under the laws of that place, are concerned. Comity does not require, that the laws of a foreign State should be admitted if injurious to ourselves, and when such a contingency arises, the rule of courtesy is held to be overruled by positive law. Story's Conflict of Laws 323, 326, 385, 391. *Harrison* v. *Sterry et al.*, 5 Cranch 289. *Potter* v. *Brown*, 5 East 124. *Ingraham* v. *Geyer*, 13 Mass. 146. 2 Kent 406, 408. *Skiff* v. *Solace*, 23 Vt. 280. *Lanfear* v. *Sumner*, 17 Mass, 110. *Tappan* v. *Poor*, 15 Mass. 422.

The debt in controversy being with the person of the trustee and *both* being under the control and jurisdiction of the laws of this State, it belongs to *those laws* to regulate the remedy, and to settle the order of payment and rules of preference.

The only operation of a foreign assignment is to give the foreign assignee a right to pursue *the remedy afforded by our law*, for the recovery of his debt. It is a question belonging *exclusively* to the *lex fori*, and in all such cases the *lex fori* should be administered without prejudice to itself. 2 Kent 406–8.

The opinion of the court was delivered by

BENNETT, J. This case comes up to this court, upon exceptions, by the claimant to the decision of the County Court, rendering the trustee chargeable. It seems, that the trustee was indebted to John C. Morrison, the principal defendant, for goods sold and delivered at the city of New York; and the case has been argued upon the ground that the trustee was at the time, and ever

since has been, a resident of this State, and the plaintiffs, as well as the claimant, and principal defendant residents of the city of New York. Such we suppose, was probably the case; but no such facts are distinctly found by the County Court, though in the assignment, which is a part of the case, both the principal debtor, and the claimant are described as residents of the city of New York. The claimant sets up a *prior* title to the *chose in action* under the assignment, bearing date the 10th day of May, 1851; and the plaintiffs' writ was served upon the trustee, on the 15th day of May, five days after; and it does not appear, that the trustee was notified of the assignment, until the 24th day of May, 1851. No questions are raised, as to the validity of the assignment; but the question is, (treating the assignment as valid,) which of the parties have the *superior* right to this *chose in action:* the attaching creditor, or the assignee ? The bill of exceptions for some cause, presents the case in a very defective manner; and that this court is, and must be, with respect to facts, limited to the statement made by the court below, can not be questioned.

We will proceed to examine the rights of the contending parties, under this bill of exceptions. It may be remarked, that the plaintiffs' claim to the *chose in action*, now in question, rests upon the statute law of this State, and the rights of assignee upon common law principles. We have no doubt, this debt is subject to our trustee process at the suit of the plaintiffs, though citizens of the State of New York. By the United States Constitution, "The citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States." Art. 4 § 2. And if we should deny to the plaintiffs, the use of our courts, to enforce their legal rights, whether against our own citizens, or others, as fully as they may be used by the citizens of Vermont, for that purpose, there might be ground to complain of an infraction of this provision in the Constitution. It is no objection, that the principal debtor, is a citizen of New York. In *Chase, Grew & Co.* v. *Houghton & Co. and Trustees*, 16 Vt. 594, both the plaintiffs, and principal debtors, were citizens of Massachusetts. See also *Hull* v. *Blake*, 13 Mass. 153. *Embree* v. *Hanna*, 5 Johns. 101.

The case of *Baylies* v. *Houghton & Co. and Trustees*, 15 Vt. 626, in which it was held, that the trustees were not chargeable, is put upon the ground that the trustees executed the *negotiable* notes

in question, to the principal debtors in Boston, Massachusetts, and which, by the implication of law were payable there; and that, by the laws of Massachusetts, such paper was not there subject to the trustee process. But in the case of *Burlock* v. *Taylor and Trustees*, 16 Pick. 335, the plaintiff, the principal defendants and the assignees, were all citizens of New York, and the claim was for goods sold and delivered. The assignment, in that case, was executed at New York, and it was agreed to be valid by the laws of that State; and it was held that *as against a citizen of that State*, it operated to defeat any right by a subsequent trustee attachment in Massachusetts, upon the ground, that the court would, where citizens of New York were the parties, give effect to the assignment in New York, though the assignment might be invalid by the laws of Massachusetts. It is not intimated, that the debt would not have been attachable, if it had not been for the previous assignment; and had the trustee suit been by a citizen of Massachusetts, the court might not have given effect to the laws of New York, from comity of nations.

In *Ingraham* v. *Geyer*, 13 Mass. 146, where it appeared that the trustee was indebted to a firm in Pennsylvania, and there had been an assignment and notice; yet the court held that *a creditor in Massachusetts* might attach the debt, even though the *assignment* was good in Pennsylvania. Though it is said, that *movables* and *debts* have no *situs;* but will follow the person of the owner, and that the disposition of them is to be governed by the laws of the place of his domicil; yet to this rule there are some exceptions, and one is, that the law of the domicil will not, from comity of nations, be enforced in an other government, if injurious to the citizens of such government.

In disposing of the case upon the present bill of exceptions, it becomes necessary to see how it stands under the laws of this State. If to be governed by them, we think the claimant cannot succeed. The rule here is well settled, that to perfect an assignment of a *chose in action* as against *bona fide* creditors, and subsequent purchasers, *notice* must be given to the debtor, of such assignment. In *Barney* v. *Douglass & Trustee* 19 Vt. 98, the *chose in action* had been assigned *prior* to the service of the trustee process; but no notice given, and the attachment was allowed to prevail for the want of such notice. If the case before us had

shown that the plaintiffs had had notice of the assignment before they attached, they might perhaps have been postponed to the assignee, upon the ground that they could not present themselves in the character of *bona fide* creditors, according to the authority of *Bishop* v. *Slocomb*, 10 Conn. 446.

If the law requires *notice*, where a single *chose in action* is assigned, before the right of the assignee is perfected, except as against the assignor, there is no reason why the rule should not be the same, where an insolvent has assigned all his *choses in action* for the benefit of creditors.

In *Hall* v. *Parsons*, 17 Vt. 271, it was held, that when personal property in possession, was assigned, first for the benefit of the assignee, as creditor of the assignor, and then for the benefit of the creditors generally, the same change of possession must be had, as in the case of an ordinary sale. In the case of an assignment of a *chose in action*, an equitable interest only, passes, and as from the nature of the case, there can be no delivery, or change in the possession, *notice* comes in lieu thereof; and until the assignee gives notice to the debtor or holder of the fund, he has not done every thing he could, to complete his title, and this should be required of him. Besides, to require notice, tends to prevent fraud, and until notice is given, the debtor cannot be regarded, as holding the funds in trust for the assignee.

It has long been the settled law in Connecticut, that to complete the title of an assignee of a *chose in action*, notice is essential except as against the the assignor. *Tudor, Woodbridge & Co.* v. *Perkins*, 3 Day 364. *Judah* v. *Judd*, 5 Day 534. *Bishop et al.* v. *Slocumb*, 10 Conn. 444. *Vanbuskirk* v. *Hartford Fire Ins. Co.*, 14 Conn. 144.

We, at an early day, in our jurisprudence, adopted the Connecticut law upon this subject, and so far as it relates to subsequent purchasers, I regard the same rule as settled in England, and upon principle, subsequent purchasers and attaching creditors, must stand upon the same ground. *Dearal* v. *Hall.* 3 Russ. 1. *Loveridge* v. *Cooper*, 3 Russ. 30. *Timson* v. *Ramsbottom*, 2 Shem. 35. *Foster* v. *Cockwell*, 9 Bligh 332, 375, 376.

From this it must follow, if the rights of the parties are to be governed by the laws of this State, the attaching creditor has the superior title. There is no pretence, in the case made, that the

plaintiffs knew of the assignment, when they attached, and the notice was not given to the trustee, until the 24th day of May; fourteen days after the assignment, and nine days after the attachment.

But it is claimed in argument, that by the laws of New York, the right of the assignee was perfect, to the *chose in action*, even against attaching creditors, without notice to the debtor of the assignment, and that, by comity of nations, we should apply the rule of the New York law, to this case. But before this can be claimed, it should appear that the attaching creditors are citizens of New York, and that the New York rule of law is different from ours, in regard to the necessity of notice. In the very able opinion of JUDGE PHELPS, in *Pickering* v. *Fisk*, 6 Vt. 105, he says, it is a settled rule, that courts do not *ex officio* take notice of the laws of a foreign sovereignty, but they are to be pleaded and proved as facts, with the qualification, that they may be given in evidence without a plea, like other matters where the rules of pleading, do not require the matter to be set forth specially.

The presumption is, that upon a common law question, the common law of a sister State is the same as our own, and courts cannot take *judicial notice*, of any law of a sister State at variance with our own. If it is claimed that there is a difference, the burden of proof, is upon the party claiming it. *Legg* v. *Legg*, 8 Mass. 99. *Newton* v. *Pope*, 1 Conn. 109. *Holmes* v. *Broughton*, 10 Wend. 75. *Leavenworth* v. *Brockway*, 2 Hill 201. *Brown* v. *Gracy*, 2 D. & R. 41.

In *Buskirk* v. *Hartford Fire Ins. Co.*, 14 Conn. 141, the plaintiff and parties to the assignment, were all inhabitants of New York, and no notice had been given of the assignment, until after the service of the trustee process. The court, also found upon the testimony of a counsellor of law, residing in New York, "that an assignment of a *chose in action* in that State, was effectual to convey the title to the assignee, upon the delivery of the instrument to him, and that no notice need be given to the debtor, of the assignment." Upon the facts reported, the case was reserved for the advice of the full-bench.

In argument, it was claimed that the finding of the court below, was not sufficient to show, that by the law of New York, notice was not necessary to defeat an attachment, and that the finding was only as to the rights between assignor and assignee, and of

XXV. 39

this opinion was the court. JUDGE WAIT says, " that to justify the conclusion that the laws of New York, so widely differed from their laws, and those of England, upon a principle, so important, it *ought to be made distinctly to appear*, and not be left to any *forced construction.*" Upon this defect in the finding, the court held, that the case must be governed by the laws of their own State, and advised that judgment must be for the attaching creditor.

After this decision, the same cause came before the superior court a second time, and upon further hearing, this defect in the finding was obviated, and the superior court, then rendered judgment against the attaching creditor, and this was affirmed in the Supreme Court of errors. 14 Conn. 584.

It was a *cardinal* point, in that decision, that the attaching creditor was an inhabitant of New York. The case of *Burlock* v. *Taylor*, 16 Pick. 335, is like the case in the 14th of Conn., and both of them seem to be well considered cases. If the laws of a sister State are to be proved in our courts, *as facts*, it is clear, that it would be error in this court, to go aside of the bill of exceptions and take *judicial notice* of them. In *Talbot* v. *Leeman*, 1 Cranch 38, that eminent jurist CHIEF JUSTICE MARSHALL remarks, "that it is not to be questioned that the laws of a foreign nation, designed only for the direction of its own affairs, are not to be noticed by the courts of other countries, unless *proved as facts*, and that that court, with respect to facts, was limited to the statement made in the court below." On this question, it has often been decided, that sister states stand in the same relation as foreign nations. Though we may be of the opinion, that the real rights of the parties have not been fairly tried; yet upon this bill of exceptions we cannot say there is error in the court below; and the party is entitled to an affirmance of the judgment.

Upon motion of the claimant, the court however, upon terms, *pro forma*, reversed the judgment, and remanded the cause to the County Court,