RAY v. RAYMOND.

1. In order to complete an assignment of personalty for the benefit of creditors and to pass title to the assignee, there should be such a delivery to and acceptance by him as the nature of the property conveyed will reasonably admit of.

2. Until such change of possession takes place the title does not pass to the assignee as against a *bona fide* creditor without notice of the unfinished assignment proceedings under the statute of frauds.

3. Section 20 of the statute of frauds in this state does not in any manner affect section 14 of the same statute.

*Error to District Court of Fremont County.*

THE facts are stated in the opinion.

Mr. T. A. McMORRIS, for plaintiff in error.

Messrs. MACON and HOBSON, for defendant in error.

HELM, J. In the month of September, A. D. 1882, F. S. & W. J. Hartzell, as partners, were engaged in the

business of banking at the town of Silver Cliff, in Custer county, and also at Salida, in Chaffee county. About 10 o'clock P. M. on the 4th of said month, the partners, being in Silver Cliff, executed and delivered a deed of assignment conveying all of the partnership property, real and personal, to A. J. Rising, as assignee, for the benefit of the firm creditors. Rising immediately accepted the trust. At the hour of 7 o'clock A. M. on the succeeding day, plaintiff in error, being the sheriff of Chaffee county, levied a writ of attachment upon certain personal property of said firm at Salida; such writ issuing in a suit brought by Russell & Alexander, a partnership creditor of the firm. This property, when thus attached by the sheriff, was in the custody of one Holbrook, who was cashier and agent of the Hartzells, and had full charge of the same, together with their business in Salida at the time, and who was then carrying on such business for them in the usual manner. Holbrook had no notice or knowledge whatever of the assignment or attempted assignment aforesaid by his principal of the property under his control, until five hours subsequent to the levy of the writ of attachment. Four hours and forty-seven minutes after the levy of said writ, the deed of assignment was filed for record in the office of the clerk and recorder of Chaffee county. There was no opportunity for a change of possession of the property at Salida, unless the same could have been consummated by telegraph, after the assignment and before the levy of the writ of attachment. No telegrams were sent, and there is no pretense that the transfer was attempted until some time during the afternoon of the 5th, when Rising had arrived at Salida in person. There is nothing in the record to show that either Russell & Alexander or the sheriff had, prior to the levy of said writ, any notice or knowledge whatever that the assignment had been made, or even that it was contemplated by the Hartzells. Within a few days after the 5th of September, a judgment was

recovered for upwards of $900 against the Hartzells in the attachment suit, which was never satisfied. Some other complications exist, and other facts attending subsequent proceedings were given in evidence below; but, entertaining the view we do of the law, it is unnecessary to repeat them here.

Defendant in error, as the successor in trust to Rising, the assignee, brought his suit in replevin against the sheriff to recover possession of the property attached as aforesaid, and obtained judgment therefor. To reverse the latter judgment the cause is now pending in this court.

At the time of the foregoing transaction there was no state statute dealing exclusively with assignments for the benefit of creditors that affected the question which we deem decisive upon this review.

A number of the principles governing assignments of personal property, including those made for the benefit of creditors, are analogous to rules which control in the *sale* of such property. Among these, according to the authorities, is that relating to a *delivery* of the property assigned. In order to complete the transaction and pass the title to the assignee, it is held that there must be such a delivery to and acceptance by him as the nature of the personalty conveyed will reasonably admit of. *Ward v. Morrison*, 25 Vt. 593, citing *Hall v. Parsons*, 17 Vt. 271; *Wilson v. Pearson*, 20 Ill. 81. We have no hesitancy in adopting the rule that until this change of possession takes place, the title has not passed to the assignee, as against a *bona fide* creditor without notice of the assignment proceedings. It will be seen further on that we leave as an open question the rights of a creditor who is charged with such notice.

If, therefore, a creditor without notice levies an attachment or execution upon the property before the assignee has secured possession thereof, he thereby obtains a lien

to which the title of the assignee is subject.   It should
be noted, in passing, that prior to 1885 we had no statute
providing for the recording of deeds which convey per-
sonal property to a trustee for the benefit of creditors.

It is true that the rule as to immediate delivery is re-
laxed by some of the authorities; that, in the absence of
statute, it is said to be sufficient if such delivery follow
the execution of the deed of assignment and acceptance
of the trust *as soon as practicable.*   But we take it that
this rule must be understood as applying to those cases
where, although there has been no change of possession,
yet the attaching creditor has knowledge of the *bona fide*
assignment proceedings which have already taken place.

Counsel for plaintiff in error also contends that this sub-
ject is governed by our statute of frauds.   He is correct, if
the provision relied on covers assignments for the benefit
of creditors.   Section 1523, Gen. Stat., being section 14 of
the act, provides that "every sale made by a vendor of
goods and chattels in his possession or under his control,
and every assignment of goods and chattels, unless the
same be accompanied by an immediate delivery, and be fol-
lowed by an actual and continued change of possession of
the thing sold or assigned, shall be presumed to be fraudu-
lent and void, as against the creditors of the vendor, or the
creditors of the person making such assignment, or sub-
sequent purchasers in good faith; and this presumption
shall be conclusive."   It thus appears that in this state,
where the assignment is not accompanied by an "imme-
diate delivery," such fact, in and of itself, constitutes a
conclusive presumption of fraud as to creditors of the
assignor whose execution or attachment levy precedes
the assignee's possession.   As stated by another court in
construing a similar provision: "The statute admits of
no explanation excusing the delivery."   *Woods v. Bugbey,*
29 Cal. 467.   See, also, *Godchaux v. Mulford,* 26 Cal.
316.   Interpreting this provision with reference to sales,

see *Goodrich v. Michael*, 3 Colo. 77; *Cook v. Mann*, 6 Colo. 21; *Wilcox v. Jackson*, 7 Colo. 521; *S. C.* 4 Pac. Rep. 966.

We do not construe the foregoing section fully. We only consider the assignment feature thereof, if applicable, with reference to the facts disclosed in the case at bar; and it is therefore sufficient for us to say that, however the conclusion may be where the creditor has notice of the unfinished assignment proceedings, in cases like the one before us, where he procures his attachment levy without such notice, he obtains a lien which takes precedence over the title of the assignee.

But we are referred by counsel for defendant in error to section 1529 of the General Statutes, being section 20 of the act mentioned. It reads as follows: "The question of fraudulent intent, in all cases arising under the provisions of this title, shall be deemed a question of fact, and not of law. * * *" Counsel claim that by virtue of the latter provision, the fraud recognized in the former is made a question of fact. But, as we have already suggested, the language of section 14 renders the presumption of fraud, in the absence of a delivery, there being intervening rights, conclusive. Such presumption thereby becomes a presumption of law. Section 20 unquestionably refers to other provisions of the act, which pronounce certain transactions made with a *fraudulent intent* void; it does not in any manner affect or modify the conclusive presumption of law declared by section 14.

Taking this view of the law, it follows that we must reverse the judgment; and such legal conclusion being decisive of this case, we deem it unnecessary to prolong the opinion by a discussion of the remaining questions presented. The judgment is reversed and the cause remanded.

*Reversed.*